UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY DUVA,<br><br>                        **Plaintiff,**<br><br>       v.<br><br>NANCY A. BERRYHILL, COMMISSIONER<br>OF SOCIAL SECURITY,<br><br>                       **Defendant.** | Civ. No. 18-943 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Mary Duva brings this action pursuant to 45 U.S.C. 405(g) and §1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI"), 42 U.S.C. § 1381. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**I.    BACKGROUND**

Ms. Duva seeks to reverse a finding that she did not meet the Social Security Act's definition of disability from June 23, 2014 to October 11, 2016. (Pl. Br. 2).[1] Ms. Duva applied for DIB and SSI on June 23, 2014. (R. 11). She alleges disabilities relating to migraines and visual impairment. (R. 13); (Pl. Br. 2). These claims were denied initially on October 3, 2014, and upon reconsideration on March 23, 2015. (R. 11).

---

[1]    Citations to the record are abbreviated as follows:

    "R." = Administrative Record (DE 10)

    "Pl. Br." = Brief in Support of Plaintiff Mary Duva (DE 23)

1

On March 31, 2015, Ms. Duva requested a hearing before an ALJ. (R. 86). Ms. Duva appeared and testified at a hearing on October 11, 2016 in Newark, New Jersey. (R. 8, 24). The attendees at the hearing were ALJ Douglass Alvarado; a vocational expert ("VE") witness, Rocco J. Meola; and claimant's attorneys, Kristin Mancuso and Michael J. Parker. (R. 8, 24; Pl. Br. 2).

On December 19, 2016, the ALJ issued a decision finding that Ms. Duva was not disabled as defined by the Social Security Act. (R. 11–19).

On November 18, 2017, the Appeals Council denied Ms. Duva's request for review (R. 1–5), rendering the ALJ's decision the final decision of the Commissioner. Ms. Duva then appealed to this Court, challenging the ALJ's determination that she was not disabled from June 23, 2014 to October 11, 2016. (Pl. Br. 4).

## II. DISCUSSION

To qualify for DIB or SSI, a claimant must meet income and resource limitations and show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A),(B); 20 C.F.R. § 416.905(a); *see Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607,

610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. §§ 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Douglass Alvarado followed the five-step process in determining that Ms. Duva was not disabled from June 23, 2014 (the alleged onset date) to October 11, 2016 (the date of her hearing). His findings may be summarized as follows:

**Step One:** At step one, the ALJ determined that Ms. Duva had not engaged in substantial gainful activity since June 23, 2014, the application date. (R. 13).

**Step Two:** At step two, the ALJ determined that Ms. Duva had the following severe impairments: visual impairments and migraines. (R. 13). The ALJ also found treatment records indicated the following non-severe impairments: hypertension, trigger finger, and back pain. (*Id.*).

**Step Three:** At step three, the ALJ found that Ms. Duva did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1 (R. 14).

**Step Four:** At step four, "[a]fter careful consideration of the entire record," the ALJ found that Ms. Duva had the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limits: the claimant can never by exposed to unprotected heights, hazardous moving mechanical parts or operate a motor vehicle. The claimant is precluded from work requiring good depth perception and can avoid ordinary hazards in the workplace. The claimant has monocular vision and can perform work, which requires occasional near and far acuity.

(R. 14).

The ALJ also determined that Ms. Duva was able to perform past relevant work as a sales attendant (Dictionary of Occupational Titles ("DOT")# 299.677-010). (R. 17).

**Step Five:** At step five, the ALJ considered Ms. Duva's age, education, work experience, and RFC, as well as the Medical-Vocational Guidelines. (R.

5

17–18). The Medical-Vocational Guidelines are tables that set forth presumptions of whether significant numbers of jobs exist in the national economy for a claimant. 20 C.F.R. Pt. 404, subpt. P, app. 2. These presumptions vary based on a claimant's age, education, work experience, and work capability. *Id.* The ALJ determined that Ms. Duva is able to perform jobs existing in significant numbers in the national economy. (R. 18). Relying on the testimony of VE Rocco J. Meola, the ALJ identified several representative jobs that Ms. Duva could perform: cafeteria attendant (DOT# 311.677-010); label machine operator (DOT# 689.685-086); and sorter (DOT# 573.687-034). According to the VE, there are over 158,000 of such jobs available nationally. (R. 18).

Therefore, the ALJ ultimately determined that Ms. Duva was "not disabled" under the Social Security Act. (R. 19).

### C. Analysis of Ms. Duva's Appeal

Ms. Duva challenges ALJ Alvarado's determination that she has not been disabled since June 23, 2014. She claims that the ALJ committed the following errors: (1) failure to develop the medical record in support of Steps Three through Five, (Pl. Br. 14–16); (2) failure to properly evaluate Ms. Duva's RFC, (*id.* 16–18); (3) failure to give controlling weight to Ms. Duva's physicians, (*id.* 19–20); (4) improperly considering Ms. Duva's subjective complaints, (*id.* 20–22); (5) incorrectly concluding that Ms. Duva could return to past relevant work (*id.* 22–25); and (6) failing to meet the appropriate burden at Step Five, (*id.* 25–26). I address each of Ms. Duva's arguments below.

#### 1. Development of the record

Ms. Duva argues that the ALJ failed to fully and fairly develop the medical record in order to evaluate steps 3 through 5. (Pl. Br. 14–16). First, Ms. Duva argues that the ALJ did not carefully review her visual impairments under the proper listing. (*Id.*). Second, she argues that the ALJ otherwise failed to develop the record with respect to her vision. (*Id.*). Third, Ms. Duva argues

that the ALJ failed to consider her alleged migraines and trigger finger on her RFC. (*Id.*). I address each of these arguments below.

"ALJs have a duty to develop a full and fair record in social security cases. Accordingly, an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits. This is so even though the claimant bears the burden to prove his disability." *Sudler v. Berryhill*, No. 15-729, 2017 WL 1197676, at *10 (D. Del. Mar. 30, 2017).[2]

First, pertaining to Step Three, Ms. Duva argues that the ALJ should have found that she meets the criteria for Listing 2.04, Loss of Visual Efficiency, (Pl. Br. 14), and briefly mentions that the ALJ did not discuss Listing 2.02 or 2.03. (*Id.* 14–15). At step three, a claimant must show that her impairment matches a listing by meeting all of the specified criteria. *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990); *see also Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (noting it is the plaintiff's burden to prove she meets or medically equals an impairment). "An impairment that manifests only some of those criteria, no matter how severe, does not qualify." *Sullivan*, 493 U.S. at 525.

To meet Listing 2.04, the visual efficiency of Ms. Duva's better eye (her left), after best correction, would have to equal 20 percent or less, and her visual impairment value, at best correction, would have to reach 1.00 or greater. 20 C.F.R. § 404 Subpt. P, App. 1, § 2.04. At step three, the ALJ explained that Ms. Duva did not meet the criteria for Listing 2.04. With a visual

---

[2] Before addressing each argument individually, I generally note that, when Ms. Duva appeared before the ALJ, she was represented by an attorney. When an applicant for social security benefits is represented by counsel, the ALJ "is entitled to assume that [the claimant] is making [the] strongest case for benefits." *Batts v. Barnhart*, 2002 WL 32345745, at *8 (E.D. Pa Mar. 29 2002) citing *Glenn v. Sec. of Health and Human Serv.*, 814 F.2d 387, 391 (7th Cir. 1987)); *but see Trancunger v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 106, 118 (S.D.N.Y. 2017) ("An ALJ has a duty to develop the record regardless of whether the claimant is represented by counsel."). That attorney was certainly able to request a consultative exam or otherwise develop or share records to support her assertion that the below issues warranted further development. Neither Ms. Duva nor her counsel, however, brought forth any such adequate evidence.

Ms. Duva's visual acuity value was 20/20 in her left eye. (244, 246, 248, 250). With no visual field loss in her left eye, Ms. Duva had no visual field impairment. (R. 58, 69).[3] With a visual acuity impairment of 0.0 and no visual field impairment, Ms. Duva certainly did not meet the threshold 1.00 visual impairment value. 20 C.F.R. § 404 Subpt. P, App. 1, § 2.04. Here, Ms. Duva has not put forth adequate evidence to contradict that finding. (DE 23, 35). Rather, she lists diagnoses with no explanation as to how they would affect her vision. (DE 35 p. 3).

I also consider that, although Ms. Duva notes that the ALJ did not discuss Listing 2.02 or 2.03, she provides no argument as to why the ALJ should have done so. (Pl. Br. 14–15). She has not put forth evidence to indicate that she would have met the criteria for either listing. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also* 20 C.F.R. § 404.1512(a) (stating that the claimant must furnish medical and other evidence that the adjudicator can use to reach conclusions about the claimant's medical impairments).[4]

Second, Ms. Duva claims that the ALJ failed to develop the record with respect to her vision problems. (Pl. Br 14–16). Under the regulations, the Commissioner "may" request a claimant to attend a consultative examination. 20 C.F.R. § 416.912. Such an examination may be requested when the Commissioner is not presented with the information (or is presented with inconsistent information) that is necessary to make a decision. 20 C.F.R. § 416.919a(a)-(b). When there is an inconsistency between medical opinions and record evidence, the Commissioner will look to the available evidence. 20 C.F.R.

---

[3] The ALJ may have also considered that Dr. Paul Langer noted Ms. Duva's visual acuity as 20/25 in her left eye. (R. 277). In that case, her visual acuity would equate to .80, only a small visual field impairment, nowhere near the criteria in Listing 2.04.

[4] Listing 2.02 requires that the claimant's remaining vision in the better eye is 20/200 or less after best correction. *See* 20 C.F.R. ¶ 404 Subpt. P. App. 1, § 2.02. However, Ms. Duva's left vision was measured at 20/20. (R. 244, 248, 250). Listing 2.03 contains several alternative requirements, including a visual efficiency of 20 percent or less, none of which Ms. Duva has presented here. *See* 20 C.F.R. ¶ 404 Subpt. P. App. 1, § 2.03.

§ 416.920b(b)(1). If the inconsistency or lack of information does not allow the Commissioner to make a decision, the Commissioner may take follow-up steps to develop the record, including by re-contacting a medical source. *Id.* at (b)(2)(i). Here, as discussed *supra*, the ALJ was presented with adequate evidence in the record to make the decision that Ms. Duva did not meet listing 2.04—she is practically blind in her right eye but has normal vision in her left eye. (*See* R. 244, 246, 248, 250). Ms. Duva has not produced evidence to demonstrate that the ALJ lacked sufficient evidence to make his decision. (DE 23, 35).

Third, Ms. Duva argues that the ALJ did not adequately consider Ms. Duva's migraines and trigger finger symptoms in the RFC, which was computed at Step Four. (Pl. Br. 15–16). The record demonstrates that Ms. Duva's migraines were treated with medication, (R. 15, 300), and occurred infrequently (R. 15, 299). Further, Ms. Duva denied experiencing memory loss or changes in her mental status. (R. 299–300). Further, Dr. Sheehy noted that it was unclear whether Ms. Duva's headaches were actually migraines, and, even if they did occur, there was no evidence to demonstrate how frequent or severe they were. (R. 56).

As to the alleged trigger finger, there was no evidence to suggest that the trigger finger caused more than minimal limitation on Ms. Duva's ability to perform basic work activities. Ms. Duva reported to her doctors that she must pry open her right fourth digit when she wakes up in the morning, causing her pain. (R. 279). Ms. Duva has failed to identify evidence that demonstrates that her "trigger finger" limits her throughout the day or has any other limiting effect. (Pl. Br.; Pl. Reply). Thus, the ALJ gave Ms. Duva's alleged migraines and trigger finger an appropriate level of consideration.

### 2. Evidence in support of the RFC evaluation

Ms. Duva argues that the ALJ erred in evaluating her RFC. First, she argues, the ALJ failed to consider Ms. Duva's severe and non-severe impairments and subjective complaints. (Pl. Br. pp. 17–18). Second, she

9

argues, the ALJ failed to consider all of Ms. Duva's nonexertional impairments. (*Id.* pp. 18–19). An RFC need reflect only the claimant's "credibly established limitations"; the ALJ is not required to accept all claimed limitations for purposes of assessing the claimant's RFC. *Rutherford v. Barnhart*, 399 F. 3d 546, 554 (3d Cir. 2005).

First, I consider whether the ALJ failed to consider all of Ms. Duva's impairments and complaints. Ms. Duva asserts that she had blurred vision, lack of depth perception, difficulties with hand-eye coordination, difficulty grasping, and lack of balance, which would cause her trouble carrying, standing, and walking. (Pl. Br. 17 (citing to no evidence)). She argues that those alleged "impairments, plus her subjective complaints, limited her ability to perform any physical work greater than light work." (*Id.* 17–18).

Here, the RFC reflected each of Ms. Duva's credibly established limitations. Certainly, the ALJ took each of Ms. Duva's alleged ailments into consideration, (R. 15 (listing the impairments and activities Ms. Duva testified to in the hearing)). For reasons further discussed *infra* each alleged ailment was not given full weight. Further, the ALJ considered Ms. Duva's full medical history, including treatment notes and opinion evidence. (*Id.* 15–16). Upon consideration of that record, the ALJ determined that through treatment and over time, several of Ms. Duva's claimed ailments had subsided. (*Id.* 15). For example, through steroid drops and antiviral medication, Ms. Duva's visual impairments improved. (*Id.*). Furthermore, the ALJ noted that, although Ms. Duva complained of light sensitivity, blurry vision, and headaches, her previous treating physician, Dr. D'Amato noted no such complaints in Ms. Duva's charts. (*Id.*). The ALJ also noted that the opinion evidence supported his RFC finding. State agency consultant Dr. Spitz opined that Ms. Duva has no exertional limits based on her medical records submitted by October 1, 2014.[5]

---

[5] Ms. Duva asserts that Dr. Spitz's opinion should not be given significant weight because he was a non-treating physician and opined before the reports of Drs. Langer, Nissirios, Higgins, and D'Amato were submitted. (DE 35 p. 5). Nevertheless, the ALJ

(R. 15). Further, on October 23, 2015, Dr. Sheehy opined that Ms. Duva had no medically determinable impairment related to migraines. (*Id.*). In January 2015, Drs. McLaron and Britman both concurred with Drs. Spitz and Sheehy. (*Id.*).[6]

Next, I consider whether Ms. Duva's alleged nonexertional limitations would prevent her from working full days of light work. (Pl. Br. 18–19). The ALJ found that Ms. Duva's nonexertional limits are exposure to unexpected heights or hazardous moving mechanical parts, operating a motor vehicle, and work requiring good depth perception. (R. 14). Plaintiff argues that the ALJ should have considered the alleged limitations in Ms. Duva's left eye, the limitations in her right eye, headaches, all discussed *supra*, and other allegedly related issues. (Pl. Br. 18). However, Ms. Duva's own function report supports the conclusion that she can perform light work within the confines of the RFC. Ms. Duva stated that she performs household chores such as ironing, washing dishes, making her bed, doing laundry, shopping, going to the bank, sweeping, washing floors, and cleaning her bathroom. (R. 170). During daylight hours, she may drive a car, and she travels independently. (*Id.* 171–72). She cooks two meals a day at least, and, while she may have trouble with some objects, she can chop, peel, and dice. (*Id.* 170).

### 3. Whether the ALJ properly evaluated the medical opinion evidence

Ms. Duva argues that the ALJ erred by not giving due consideration to the opinions of her treating physicians. (Pl. Br. 19–20).

Under 20 C.F.R. § 416.927(c), ALJs are required to weigh and evaluate "every medical opinion." Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and

---

did not rely solely on Dr. Spitz testimony, (R. 15), and Drs. McLaron and Britman later concurred with Dr. Spitz's opinion. (*Id.*).

6    At any rate, the ALJ only identified light work jobs at Steps Four and Five. (*see* VE Testimony, R. 45–47 (listing cafeteria attendant, label machine operator, and sorter all as light work)).

11

severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Accordingly, any diagnoses, prognoses, and statements about the severity and nature of impairments constitute medical opinions.

20 C.F.R. § 404.1502 lists the "acceptable medical sources" that can provide evidence to establish an impairment. "Treating source means [an] acceptable medical source who provides [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.927(a)(2) (alterations added). Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2).

"[A] reviewing court should not re-weigh the medical opinions of record but should consider only whether the ALJ's weighing of such opinions was supported by substantial evidence." *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) (citing *Monsour Med. Ctr. v. Heckler*, 806 F.3d 1185, 1190 (3d Cir. 1986)). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).

When an ALJ totally rejects a medical opinion, he or she is required to point to "contradictory medical evidence." *Cunningham v. Comm'r of Soc. Sec.*, 507 Fed. App'x 111, 118 (3d Cir. 2012). Where, as here, the ALJ is discounting, rather than rejecting, opinion evidence, he or she must "consider all the evidence and give some reason for discounting the evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (emphasis added).

Ms. Duva asserts that the ALJ "gave limited weight to treating sources Drs. D'Amato, Langer, Nissirios, Higgins, Mullengada, and Leggiero." (*Id.* 19). However, only Dr. Nissirios gave a medical opinion, but the other doctors did not. (*See* R. 232–34, 244, 246, 248, 250, 279 (making merely treatment notes and note opinions on Ms. Duva's limitations). As an example, Dr. D'Amato did diagnose Ms. Duva with right eye disciform keratitis, but did not specify how the condition would limit her, particularly in a work setting. (R. 232–34). Thus, I focus on the opinion of Dr. Nissirios and consider whether the ALJ improperly limited the weight of the doctor's opinion.

Here, while the ALJ did limit some of Dr. Nissirios's comments, he proper explained his reasons for doing so. Dr. Nissirios[7] reported that the claimant had several exertional and mental limitations. Ms. Duvas, he reported, can

> [r]arely perform activities involving depth perception or field of vision, can occasionally perform work activities involving color vision; and can frequently perform work activities involving a near and far acuity and accommodation . . . has difficulty walking up and down the stairs and cannot work with small objects. Dr. [Nissirios] further noted that the claimant's symptoms are severe enough to interfere with attention and concentration occasionally during the workday.

(R. 15–16). However, upon review, the ALJ found:

> While this opinion is not support[ed] by any treatment records of Dr. [Nissirios], it was considered and is given some weight in that it is consistent with the medical evidence of record as a whole and claimant's subjective complaints with regard to her visual abilities. However, Dr. [Nissirios]'s comments regarding the claimant's exertional and mental limitations are contrary to the medical evidence of record and are given no weight.

(R. 16). For example, Dr. Nissirios wrote that Plaintiff could frequently lift and carry up to 10 pounds, occasionally lift and carry up to 50 pounds, and occasionally stoop and crouch (R. 264). However, in the space provided to explain the limitations, Dr. Nissirios only stated that Plaintiff had limited stereo

---

[7] The ALJ mistakenly referred to Dr. Nissirios as Dr. Willizo.

13

vision (R. 264). Dr. Nissirios also claimed that Ms. Duva's symptoms would occasionally interfere with her ability to maintain attention and concentration needed to perform simple work tasks (R. 265). However, Dr. Nissirios provided no explanation for the finding despite being given space to do so (R. 265).[8] Further, not only did the medical record contradict some of Dr. Nissirios's opinion, but so did Ms. Duva's own statements about her day-to-day activities around the house. (R. 170–72) (describing daily activities that demonstrate independence, the ability to handle small objects, and adequate hand-eye coordination to perform many tasks). Thus, the ALJ had adequate reason to discount Dr. Nissirios's opinion, and I find no reason to question the ALJ's ultimate RFC decision.

I further note that Drs. D'Amato, Langer, Higgins, Mullengada, and Leggiero did not provide medical opinions. (R. 15–16). In addition, Ms. Duva does not specify any opinion or report that the ALJ allegedly ignored or should have given more weight. (*Id.* 19–20).

As recognized above, it is not the job of this Court to "re-weigh the medical opinions of record." *Hatton*, 131 F. App'x at 880. This Court's focus is on whether the ALJ's weighing of "such opinions was supported by substantial evidence." *Id.* Based on the evidence in the record and the ALJ's stated reasons, the Court finds that the ALJ's determination of how much weight to give the medical opinions was supported by substantial evidence in the record.[9]

---

[8] As an added example, The ALJ found that the medical records demonstrated that Ms. Duva could work with any size object and had visual field necessary to avoid ordinary hazards in the workplace. (R. 15). Further, the ALJ found that treatment notes indicated that Ms. Duva could see colors. (*Id.*). However, Dr. Nissirios, contradicting the evidence in the record, opined that Ms. Duva could not work with small objects and can only occasionally perform activities involving color vision. (R. 16).

[9] An ALJ is not required to adopt a specific medical opinion in her determination. "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *See Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011) ("The law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."). The ALJ makes her RFC determination based on evidence in the medical record. In this case, the ALJ

### 4. The ALJ's evaluation of Ms. Duva's subjective complaints

Ms. Duva argues that the ALJ did not properly take into account Ms. Duva's subjective complaints.[10]

It is true that the ALJ must consider all relevant evidence, including subjective complaints, in determining the RFC. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citing 20 C.F.R. § 404.1545(a) ). However, the claimant retains the burden of supporting his or her alleged RFC limitations. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also* 20 C.F.R. § 404.1545(a) ("In general, you [the plaintiff] are responsible for providing the evidence we will use to make a finding about your residual functional capacity."). Furthermore, an ALJ may reject, or only partially credit, subjective complaints if they are not credible in light of the other evidence of record. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). Nonetheless, the ALJ's credibility determination "must contain specific reasons for the finding of credibility, supported by the evidence in the case record." *See* 20 C.F.R. §§ 404.1529(b), 416.929(b).

Here, the ALJ specifically stated why Ms. Duva's subjective complaints were not entirely supported by the record. (R. 16). First, the ALJ noted that Ms. Duva has reported daily activities that are not limited to the extent one would expect given her claimed limitations. (R. 16). As discussed *supra*, Ms. Duva performs a litany of household tasks indicating that she is able to perform light work. Further, the ALJ noted that Ms. Duva has only received routine and conservative medical treatment. Medical evidence of record contained little in the way of recent treatment records supporting her allegations. (*Id.*). (I also note that most of Ms. Duva's treatment records are for conditions, such as

---

discussed several medical opinions and incorporated them into her RFC determination, (R. 14–16), which is what is required under the statute.

[10] In this section, Ms. Duva also argues that the ALJ did not properly take into account the opinion of Dr. Nissirios. As discussed *supra*, the Court properly limited the weight he was willing to give some portions of Dr. Nissirios's opinion.

urinary tract infections, which are unrelated to her allegedly disabling conditions.) (R. 301, 311–41). For all of those reasons, the ALJ properly found Ms. Duva's subjective complaints only partially persuasive.

### 5. Whether Ms. Duva may perform past relevant work

Ms. Duva argues that the ALJ erred at Step Four by finding that she could return to her past relevant work as a sales attendant, DOT code 209.677-010, as actually or generally performed. (Pl. Br. 22–24). In fact, as Ms. Duva argues, her previous job at Dollar and Party World was dual: she was both a sales attendant *and* a cashier. (Pl. Br. 22 – 24; *see also* R. 222). Here, I accept that, as the VE stated and the ALJ determined, Ms. Duva could not return to a job as a cashier. (R. 17, 45). Thus, it is evident from the record that Ms. Duva could not return to her dual job at Dollar and Party World because it encompassed the role of cashier. (*See* POMS DI 25005.020 (finding a claimant is capable of performing past relevant work that was a composite job only when the claimant could perform all parts of the composite job); *see also Levyash v. Colvin*, 2018 WL 1559769, at *11 (D.N.J. Mar. 30, 2018) ("To establish that a claimant maintains the RFC to perform past relevant work in a composite job, the evidence must establish that the plaintiff can perform *each job* within a composite job.") (emphasis added) (internal citations omitted).

All of that being said, I find the ALJ's error to be harmless. "Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Id.*; *see Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). As discussed *infra*, the ALJ did not stop there, but went on to conduct a Step Five analysis and found that Ms. Duva could perform three other light jobs, none of which involved the duties of a cashier. (R. 17–18).

### 6. Whether the ALJ incorrectly determined that Ms. Duva could perform jobs in the national economy at Step Five

The ALJ determined that Ms. Duva could perform the jobs of cafeteria attendant, label machine operator, and sorter. (R. 17–18). Ms. Duva argues

16

that the ALJ committed reversible error by failing to apply the Grid rules for light or sedentary work and by failing to account for her alleged disabilities. (Pl. Br. 25–26). Throughout this argument, Ms. Duva asserts that the ALJ improperly found that she could return to all ranges of exertional work. (Pl. Br. 25). But, as discussed *supra*, the ALJ's decision that Ms. Duva could return to all ranges of exertional work is supported by the record. Ms. Duva's only credibly established limitations were nonexertional.

At Step Five, the Commissioner bears the burden of showing that the claimant can perform work which exists in the national economy, in light of his age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v). That analysis may depend on whether the claimant has only exertional limitations, or has nonexertional limitations. Exertional limitations are impairment-caused limitations that affect a claimant's ability to meet the strength demands of a job: sitting, standing, walking, lifting, carrying, pushing, and pulling. *See* 20 C.F.R. § 404.1569a(b); SSR 96-9p. Nonexertional limitations are impairment-caused limitations that affect a claimant's ability to meet the other demands of a job, including mental capabilities; vision and hearing; postural functions such as climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling; and environmental restrictions. *See* 20 C.F.R. § 404.1569a(c)(1)(i-vi); SSR 96-9p.

Where a claimant has only exertional limitations, the Commissioner may use the Medical-Vocational Rules to determine whether such work exists. The Medical-Vocational Rules set forth tables, or grids, with various combinations of age, education, work experience and RFC, and direct a finding of disabled or not disabled for each combination. *See* 20 C.F.R. Part 404, Subpt. P, App. 2. An ALJ "may rely on these grids to establish that jobs exist in the national economy that a person with the claimant's exertional limitations could perform." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000).

Where, however, the claimant has nonexertional limitations, the grids provide only a framework, and the ALJ must consider additional evidence to

determine whether there are jobs in the national economy that someone with the claimant's combination of impairments could perform. *Id.* at 270; *see also Allen v. Barnhart*, 417 F.3d 396, 404 (3d Cir. 2005). That analysis of nonexertional impairments may include consultation of Social Security Rulings, which may serve as the additional evidence required under *Sykes v. Apfel*. Such SSRs, if directly applicable, may substitute for the testimony of a vocational expert. *See Allen*, 417 F.3d at 406 ("While, surely, the Agency can use its rules as a substitute for individualized determination, nonetheless, there must be a 'fit' between the facts of a given case, namely, the specific nonexertional impairments, and the way in which the Rule dictates that such nonexertional limitations impact the base."). But "it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work," and the ALJ must discuss this. *Id.*, at 407.

Considering Ms. Duva's nonexertional limitations, I note that Social Security Ruling 85-15 states the following:

> As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels.

Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15 (S.S.A. 1985). That SSR, in any event, was supplemented here by the input of the vocational expert, Mr. Mancuso.

Because as to nonexertional limitations the Grid provides not a mandate but only a framework, it does not undermine the ALJ's decision here. *See Sykes*, 228 F.3d at 270. The ALJ assigned Ms. Duva an RFC for the full range of exertional work, a finding which, as discussed *supra*, Ms. Duva has not met her burden to reverse. Further, the ALJ determined that Ms. Duva could avoid ordinary hazards in the workplace and could perform tasks requiring

18

occasional near and far acuity. (R. 14). Dr. Spitz's opinion supports the conclusion that Ms. Duva has the visual ability to work with any sized objects. (R. 58). In addition, Dr. Nissirios, who submitted a medical opinion, found that Ms. Duva could work with large objects. (R. 264). An RFC for all exertional levels subsumes light work. 20 C.F.R. § 404, Subpt. P, App. 2, § 204.00. (heavy work, meaning work at any exertional level, "includes the functional capability for work at the lesser functional levels as well"). Ms. Duva could certainly perform the light work required by the jobs of cafeteria attendant, label machine operator, and sorter. (*See* VE Testimony, R. 45–47 (listing cashier, sales attendant, cafeteria attendant, label machine operator, and sorter all as light work)). Considering Ms. Duva's nonexertional limitations and the opinion of the vocational expert (*see* R. 17-18, 47), the ALJ determined that a person with Ms. Duva's RFC and vocational profile could perform the job of cafeteria attendant, label machine operator, and sorter. (R. 17–18). The ALJ's determination that Ms. Duva could perform the jobs identified by the VE is supported by substantial evidence.

### III.  CONCLUSION

For the foregoing reasons, Ms. Duva has failed to demonstrate that the ALJ's decision was not supported by substantial evidence. Under the applicable standard of review, that is sufficient to require that I uphold the ALJ's denial of Ms. Duva's claims. The ALJ's decision is thus AFFIRMED.

An appropriate order accompanies this opinion.

Dated: June 27, 2019

**KEVIN MCNULTY**
**United States District Judge**